MINNIE ROSE, complainant-appellant,

*v.*

JEROME-HARVEY DEVELOPMENT COMPANY, a corporation of New Jersey, et al., defendants; MAX DOYNE, defendant-respondent.

[Submitted February term, 1934. Decided April 12th, 1934.]

*Mr. Maurice C. Brigadier,* for the complainant-appellant.

*Mr. Alexander Seclow,* for the defendant-respondent.

The opinion of the court was delivered by

CASE, J.

Our opinion on an earlier phase of the litigation is reported in *113 N. J. Eq. 161.* The suit proceeded to a decree which determined that the complainant was entitled to the sum of $14,984.59 and costs. A writ of *fieri facias* issued to the sheriff of Bergen county, sale was had and the property was struck off to the complainant for the sum of $100. Defendant Doyne thereupon presented his petition to the court

of chancery alleging that complainant had made him a party defendant in the foreclosure as a mere preliminary to a deficiency suit, and charging that a confirmation of the sale and a subsequent suit against him for the deficiency would, in view of the large value of the property, be unjust and unconscionable. A rule to show cause issued on the advice of Vice-Chancellor Fallon and, pursuant thereto, an order was made referring to one of the masters of the court to ascertain and report the fair value of the mortgaged premises at the time of the sheriff's sale, the same to "be ascertained by appropriate proofs to be submitted to him on behalf of the complainant and said defendant Max Doyne;" further equity to be reserved until the coming in of the report. The appeal is by the complainant from that order.

Complainant argues, first, that the making of the order was error because Doyne had failed and refused to admit his liability on the bond, and the argument is predicated upon the maxim that "he who seeks equity must do equity." The analogy is not well drawn. Denial of liability is not in contradiction of the effort to hold liability within equitable limitations if the adjudication be adverse. Doyne has brought an independent suit in chancery to cancel or to reform the bond; but that suit will, of course, be determined upon equitable principles. Its proper disposition is in no way dependent upon the issues presented by the present appeal, and the present appeal is not concerned with it.

It is next said that "Doyne should be denied any relief because of unclean hands;" and this contention hinges upon the *ex parte* affidavits of complainant which allege that Doyne had conveyed away certain property and charge that the conveyances were made fraudulently and for the purpose of preventing complainant from satisfying any judgment she might obtain against Doyne for the deficiency. The purpose of the conveyances was stated by Doyne, in affidavit form, and the fraud denied. That matter is extraneous to the present phase of the pending litigation. There is no adjudication of fraud against Doyne and no issue of fraud so presented,

litigated or established as that we are thereby justified in reversing an order to take proofs on value.

Finally it is said that the court below erred because Doyne has no interest in the realty and that therefore his petition was prematurely brought. The argument is inconsistent with itself and with the issue made by the bill. Counsel for appellant, at the beginning of his brief, concedes the right of Doyne to object to the confirmation notwithstanding his liability is predicated upon a collateral bond rather than upon the bond executed by the mortgagor; and that concession, as we understand, is precisely the opposite of the point now made. Further, complainant, whatever other course was available, chose to bring Doyne in as a party defendant to the foreclosure and frankly states her purpose of holding him for the deficiency. There can be no doubt that if Doyne be liable, the amount of his liability varies conversely with the amount of the net proceeds from the foreclosure sale. His direct interest in the productivity of the sale is apparent.

The mortgage was executed in November, 1930, to secure a loan of $15,000. In order that it might have priority a mortgage given to other parties in May, 1930, in the amount of $17,500 was subordinated. Complainant's proofs concede that the value of the property as of the time of the sale was from $7,000 to $8,500. Without considering the very much higher values otherwise placed in proof, we think that this demonstrates an inadequacy of sale price at the sheriff's sale so gross as to shock the conscience of the court and to justify a denial of an order confirming unless the order be upon equitable terms. *Vanderbilt* v. *Brunton Piano Co., 111 N. J. Law 596.* Equity may not be blind to unconscionable proceedings against an obligor, a party to the suit, even though he has no interest in the realty and his obligation is upon a collateral bond rather than upon the bond in chief.

The case presented was one upon which the court of chancery did well to seek to inform itself of the value of the mortgaged property at the time of the sheriff's sale; and beyond that the decretal portion of the order does not go.

The recitals of the order go further and upon them we do not pass. We are not prepared to hold that in all instances the protection of a mortgagor or of an obligor on the bond against an unconscienable result would justify the court in refusing to confirm unless the full fair value of the property, as those words have heretofore been understood, be bid or credited. The measure for fixing "fair value" or "fair and reasonable value" under such circumstances has not been determined and the quoted expressions as used in the proceeding have not been defined. "Replacement value," "market value," "the highest and best price the same would then bring in cash"—these and similar expressions have recognized meanings. But an equitable determination of a value that is "fair" as between a lender who fortified his investment by demanding and receiving a contractual bond and a borrower-owner, or one who stands in his stead, whose property is forcibly thrown, in the midst of a universal depression and money demoralization, upon a temporarily paralyzed market will likely be found to be none of these and may depend upon the special equity of each case as presented. At least the question is one that has not been argued and that, it seems, does not need to be decided at this intermediate stage. The order of reference will result in the submission, by the parties, of their respective proofs on the question of value and a report thereon by the master to the court of chancery. The actual determination of an upset price, if one is to be fixed, may await the report and the proofs.

It may be doubted whether the appellant was, or under the circumstances of the case could be, "aggrieved" by an order that calls simply for the taking of proofs and a report thereon by a master and, therefore, whether the order was the subject of an appeal. Chancery act, Revision of 1902, section 111, as amended *1 Cum. Supp. Comp. Stat. p. 269; Coryell, Executor* v. *Holcombe, 9 N. J. Eq. 650; Schnitzius* v. *Bailey, 18 Atl. Rep. 192* (not officially reported). But as we have deemed it proper to give a construction of the order, with directions, we treat the appeal as duly taken.

·The order of the court of chancery as thus construed will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.